UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLEN WILKOFSKY,<br>    Plaintiff,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>MUSICIANS, LOCAL 45, and<br>ALLENTOWN SYMPHONY<br>ASSOCIATION INC,<br>    Defendants. | :<br>:<br>:<br>:   No. 5:22-cv-1424<br>:<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
Defendants' motions to dismiss, ECF Nos. 6 and 11 – Granted

**Joseph F. Leeson, Jr.**                                                                 **June 29, 2022**
**United States District Judge**

I.      INTRODUCTION

This case raises the question: does a private party act under color of state law simply because the state permits their conduct? The answer is no.

Glen Wilkofsky joined the Allentown Symphony Association as the principal timpanist in 2001. Shortly after the Symphony hired Wilkofsky, he became a member of a union of musicians and regularly paid the necessary union dues.

Wilkofsky did not want to be a part of the union, nor did he want to pay the union dues, but a collective bargaining agreement, which had been entered into by the union and the Symphony, requires union membership as a condition of employment. For that reason, Wilkofsky begrudgingly maintained his membership in the union.

Then the Supreme Court decided *Janus v. American Federation of State, County, and Municipal Employees, Council, 31, et al.*, 138 S. Ct. 2448 (2018). In *Janus*, the Supreme Court held

that it was unconstitutional to force public employees to pay union dues when they are not members of the union because the arrangement violated freedom of speech. *See id.* at 2460.

Relying on *Janus*, Wilkofsky decided to stop paying his union dues. As a result, he was expelled from the union, and the Symphony has not allowed him to perform since. Wilkofsky brought suit against the Symphony and the union's representative, American Federation of Musicians, Local 45, alleging that the collective bargaining agreement violates his First and Fourteenth Amendment rights by forcing him to maintain his membership status in the union. *See* Compl., ECF No. 1.

The Defendants filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted. *See* Mot., ECF No. 6.[1] In their Motion, the Defendants contend that Wilkofsky's claim must fail because they are not state actors. In a response to the Motion, Wilkofsky contends that the Defendants are state actors because, among other reasons, the state authorized them to engage in collective bargaining. *See* Resp., ECF No. 14.

The Court agrees with the Defendants. Wilkofsky has not alleged facts sufficient to show that the Defendants are state actors. The challenged conduct in this case is private conduct. Since the First and Fourteenth Amendments "erect[] no shield against merely private conduct, however discriminatory or wrongful," the Court dismisses the Complaint without prejudice. *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

---

[1] In truth, the Defendants each filed their own motions to dismiss. *See* ECF No.'s 6 and 11. However, the motions are substantively identical. So, the Court treats the two motions as one and analyzes them together in this Opinion.

II.     BACKGROUND[2]

The Allentown Symphony Association, is a private, non-profit corporation, located in Allentown, Pennsylvania. *See* Mot., Ex. F. The Symphony employs multiple musicians to perform in the Allentown Symphony Orchestra. *See* Compl. ¶¶ 11, 17.

In 1999, musicians employed by the Symphony elected the American Federation of Musicians, Local 45, a private entity specializing in representing musicians, to act as their exclusive representative for the purpose of negotiating with the Symphony with respect to wages, hours, and terms and conditions of employment. *See* Mot., Ex. E. Pursuant to the Public Employee Relations Act (PERA), the Pennsylvania Labor Relations Board certified the Federation as the exclusive representative for the musicians, giving the Federation the authority to engage in collective bargaining with the Symphony on behalf of the musicians. *See id*.

The Symphony and the Federation have entered into a series of collective bargaining agreements over the years. In 2019, the Federation entered into a new collective bargaining agreement with the Symphony on behalf of the musicians (the CBA). *See* Mot., Ex. A, CBA. All existing and new full-time and part-time musician employees are subject to the CBA.

The CBA states that the Symphony recognizes the Federation "as the sole and exclusive representative of the Musicians" it employs "in accordance with the certification issued by the Pennsylvania Labor Relations Board." CBA. The CBA also recognizes the existence of a union and

---

[2]     Most of the facts are taken from the Complaint and accepted as true, with all reasonable inferences drawn in Wilkofsky's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). Other facts are taken from an exhibit attached to the Complaint and exhibits attached to the Motion that are matters of public record and are not disputed by the parties. *See Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).
        The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

a union steward that works to "assist the Union in the negotiation, enforcement and administration of" the CBA. *Id*. Under the CBA, each musician is required to become members of the union and maintain their union membership as a condition of employment. *See* Compl. ¶ 16. If a musician fails to maintain their membership in the union, then the Symphony may terminate their employment. *See id*. ¶ 17.

In 2001, Wilkofsky auditioned for the Symphony and was selected for the role of Principal Timpanist. *See id.* ¶ 18. Within one month of beginning his role, he became a union member at the direction of the Symphony. *See id.* ¶ *20.* Pursuant to the CBA, he was required to pay union dues as a condition of his employment. *See id.* ¶ 21. Wilkofsky paid his union dues for nearly two decades in order to remain employed with the Symphony even though he did not want to be a member of the union. *See id*. ¶ 22. However, he stopped paying union dues after the Supreme Court decided *Janus*. *See id.* ¶ 25.

The union notified Wilkofsky by email that he had been placed "on the suspended list" because he had not paid his dues in violation of the CBA. *See id.* ¶ 27. Wilkofsky still refused to pay the union dues, and the union sent him three separate letters informing him that he had been expelled from the union. *See id.* ¶ 28. Consequently, the Symphony prohibited Wilkofsky from performing with the orchestra and warned him that he may be terminated if he does not rejoin the union and pay the necessary dues. *See id.* ¶¶ 6, 35–36. Wilkofsky desires to perform with the orchestra, but he objects to paying the dues on the basis it violates his constitutional rights.

Wilkofsky brought suit under the Federal Civil Rights Act of 1871, 42 U.S.C. section 1983. He alleges that the Federation and the Symphony collectively violated his First and Fourteenth Amendment rights by forcing him to become a member of, and to financially support, the union or lose his position.

The Federation and the Symphony filed a motion to dismiss the Complaint, contending that they have not acted under color of state law for purposes of section 1983 because they are private actors.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

IV.   ANALYSIS

"The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). Equally important, however, is the right not to speak. "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id*.

It was for that reason that the Supreme Court struck down an Illinois law in *Janus* that forced public employees to subsidize a union even if they chose not to join. *See id.* at 2478. The Supreme Court reasoned that such a law violated free speech rights because it compelled nonmembers to subsidize private speech on matters of public concern. *See id.* at 2460.

Relying on *Janus*, Wilkofsky brings a single claim under section 1983, alleging that the Defendants violated his First and Fourteenth Amendment rights while acting under color of state law. In their Motion, the Defendants contend that the Complaint should be dismissed because they did not act under color of state law.[3]

Since Wilkofsky's section 1983 claim relies entirely on PERA, the Court first briefly reviews that act. With that in mind, the Court then analyzes Wilkofsky's claim and whether the Defendants acted under color of state law, concluding that they did not.

   a. **PERA**

PERA is a Pennsylvania act that was passed to "promote orderly and constructive relationships between public employers and their employees." Public Employee Relations Act

---

[3]   The Defendants make an alternative argument that even if they were state actors, *Janus* would not apply in this case because Wilkofsky was a union member, not a nonmember. The Court does not address that argument in this Opinion because it determines that the Defendants did not act under color of state law, but it notes that, at least at first glance, it appears that the Complaint could be dismissed under the Defendants' alternative argument too.

(PERA), Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.101. The act gives all public employees the right to form unions and to select an exclusive representative to bargain on their behalf with their public employer. *See id.* § 401.

The definition of "Public employer" for purposes of PERA is broad. Not only does it include "the Commonwealth of Pennsylvania" and "its political subdivisions", but it also includes any "nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments." *Id.* § 301(1). It further defines "Public employee" to mean any individual employed by a "public employer" as that term is defined in the act. *Id.* § 301(2).

Under PERA, if thirty percent or more of employees employed by a public employer "desire to be exclusively represented for collective bargaining purposes by a designated representative," then the employees may hold an election to select a representative. *Id.* § 603. If the employees elect an exclusive representative by a majority vote, then the Pennsylvania Labor Relations Board may certify that representative. *See id.* §§ 603–5. PERA also provides a procedure for decertifying a representative if thirty percent of employees desire to do so or if a public employer desires to do so. *See id.* § 607.

Once certified, an exclusive representative has authority under PERA to engage in collective bargaining with the public employer on behalf of the employees. *See id.* § 701. This includes the authority to enter into a collective bargaining agreement. *See id.* § 901. If a public employer and representative enter into an agreement, then the agreement must "be reduced to writing and signed by the parties." *Id.* § 901.

Although PERA allows employees to form unions and select representatives for the purpose of collective bargaining, it does not allow parties to "implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of" any

Pennsylvania law. *See id.* § 703. Moreover, while PERA permits collective bargaining agreements that require employees to maintain membership in a union, *see id.* §§ 401,705, it does not require such provisions. Indeed, PERA does not mandate what, if any, provisions must be included in any collective bargaining agreement or whether parties must enter into an agreement.

In this case, musicians employed by the Symphony utilized PERA to form a union and elected the Federation to act as their exclusive representative. The representative and the Symphony then entered into the CBA, which requires Wilkofsky to maintain membership in the union and to pay the necessary dues.

Although the Symphony is a private entity, it is considered a "public employer" for purposes of PERA. But is that enough to transform the Defendants' actions in this case into state action? Having reviewed PERA, the Court turns next to that very question.

### b. Section 1983 Claim

To bring a successful claim under section 1983, a plaintiff must prove two elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

Relying on *Janus*, Wilkofsky asserts that the Defendants violated his freedom of speech by requiring him to maintain his union membership as a condition of employment. It is true that in *Janus* the Supreme Court held that collective bargaining agreements that compel public employee nonmembers to pay union dues are unconstitutional. However, the Supreme Court never addressed the issue of state action in *Janus* because the plaintiff was employed by the Illinois Department of Healthcare and Family Services. *See Janus*, 138 S. Ct. 2448, 2461 (2018). It was therefore clear that the defendant was acting under color of state law because the employer was the state itself.

The issue is not as clear here, and *Janus* does not offer much help in determining whether state action exists in this case. Indeed, the Supreme Court specifically chose not to answer the question of whether state action exists when the state allows, but does not require, private parties to enter into collective bargaining agreements that may contain certain provisions. *See id.* at 2479 n. 24. Since the Defendants in this case are private actors, the Court must first determine whether they acted under color of state law.

### i. Defendants are not state actors because their conduct is not fairly attributable to the State.

"Most rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978). This requirement for state action "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Thus, in order for a plaintiff to bring a claim alleging their constitutional rights have been infringed by a private actor, the plaintiff must show that the acts of the private actor are "fairly attributable to the State." *Id.* at 937.

Conduct that deprives a plaintiff of a federal right is fairly attributable to the state when (1) the deprivation is caused by "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) the party charged with the deprivation "may fairly be said to be a state actor." *Id*. The Defendants in this case take issue with the second element, arguing that they are not state actors.

A party may be found to be a state actor when (i) they are a state official, (ii) they act together with or obtained significant aid from state officials, or (iii) their conduct, by its nature, is chargeable to the state. *Id*. "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id*. In other words, courts consider "the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional

governmental function; and whether the injury to the plaintiff is aggravated in a unique way by the incidents of governmental authority." *White v. Commc'ns Workers of Am., AFL-CIO, Loc. 1300*, 370 F.3d 346, 350 (3d Cir. 2004) (cleaned up).

Wilkofsky contends that the Defendants are state actors for two reasons. First, because the Defendants engaged in collective bargaining under the authorization of state law. Second, because the Symphony is a "public employer" as that term is defined in PERA. Neither argument is persuasive.

According to Wilkofsky's first argument, because the state authorized the Defendants to enter into the CBA, and the Defendants did what the state authorized them to do, they are therefore state actors. The Supreme Court, however, has rejected that exact argument. *See White* at 353–54 ("the Supreme Court rejected the argument that a legislature's express permission of a practice is sufficient to make the act of engaging in that practice state action") (*citing Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)). If parties became state actors simply because they engaged in conduct that has been permitted by the state, then the state action doctrine would be ineffectual. This determination is supported by how the Supreme Court applied the state action doctrine to a public utility company in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974).

In *Jackson*, the state issued a certificate of public convenience to a public utility company, allowing the utility company to deliver electricity to certain areas. *See id.* at 346. The state also gave the utility company a monopoly and heavily regulated its business. *See id.* at 346, 351–52. Under a provision of its "tariff" with the state, the utility company had the authority to turn off power to any customer for lack of payment so long as it gave reasonable notice to the customer. *See id.* at 346.

The utility company shut off the plaintiff's power, and the plaintiff filed suit against the utility company under the Civil Rights Act of 1871. *See id.* at 347. The district court dismissed the plaintiff's complaint "on the ground that the termination did not constitute state action and hence

was not subject to judicial scrutiny under the Fourteenth amendment." *See id*. at 349. The United States Court of Appeals for the Third Circuit affirmed, and the Supreme Court granted certiorari. *See id.*

The Supreme Court agreed with the lower courts, determining that the utility company was not a state actor. The Court reasoned that the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth amendment." *Id.* at 350. Even though the state approved the utility company's conduct by issuing it a certificate, provided it with a monopoly, and regulated its business, there was no state action because the state was "not sufficiently connected" with the utility's conduct of turning off the plaintiff's power. *See id.* at 358–59.

Simply put, conduct "allowed by state law where the initiative comes from [a private party] and not from the State, does not make its action in doing so 'state action' for purposes of the Fourteenth Amendment." *Id.* at 357. If this were not the case, then any person with a driver's license would become a state actor each time they got behind the wheel because they received their license to drive from the state.

Other examples of private individuals acting under the permission of state law, or examples of individuals who receive some sort of license from the state before participating in certain conduct, are too numerous to list in this Opinion. This is all to say that the question is not whether the state permits the challenged act, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351.

In this case, the state permitted the Defendants to enter into the CBA. However, Wilkofsky does not allege any other involvement by the state that brought the CBA to fruition. It was the musicians who elected the Federation as their exclusive representative; it was the Federation who

utilized PERA to engage in collective bargaining with the Symphony; and it was the Symphony and Federation who agreed to the terms of the CBA and entered into the same. "The fact that the parties availed themselves of the collective bargaining procedures established by PERA is not sufficient to establish state action." *Oliver v. Serv. Emps. Int'l Union Loc. 668*, 415 F. Supp. 3d 602, 611 (E.D. Pa. 2019).

Wilkofsky's first argument therefore fails as a matter of law. The fact that the state simply permitted the Defendants to enter into the CBA does not mean they acted under color of state law.

The Court now turns to Wilkofsky's second argument—that the Symphony is a state actor because it is considered a "public employer" under PERA. If accepted, this argument would also make the state action doctrine ineffectual because it evades the "fairly attributable" test altogether.

Wilkofsky suggests that the Court need not consider the challenged conduct here because PERA defines the Symphony as a public employer. According to Wilkofsky, PERA's broad definition of "public employer," which includes the Symphony, acts as a short cut to determine that the Defendants acted under color of state law. Indeed, in the Response, Wilkofsky does not even attempt to apply the "fairly attributable" test that he relies on. *See* Resp. 4.

It is clear, however, that this Court cannot take a short cut when determining whether state action exists. "[D]eciding whether 'there has been state action *requires* an inquiry into whether there is a sufficiently close nexus between the State and the challenged action of [the Defendants] so that the action of the latter may be fairly treated as that of the State itself'" *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (emphasis added) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

That inquiry "begins by identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (cleaned up). Here, Wilkofsky complains specifically about the provision in the CBA that requires him to maintain his membership

in the union in order to remain employed with the Symphony. Having identified the challenged conduct, the Court next analyzes the conduct under the lens of the fairly attributable test.

*Whether the Defendants are state officials*. The first factor is straightforward and does not support a determination that the Defendants are state actors. Wilkofsky does not allege that either defendant is a state official. Indeed, the Symphony is a private non-profit corporation, and the Federation is a private entity too.

*Whether the Defendants acted together with or obtained significant aid from state officials*. The second factor does not suggest state action either. Wilkofsky does not allege that the Defendants acted with the state in drafting or entering into the CBA.

He does assert that the Defendants bring their conduct within the realm of state action by relying on the State to enforce the CBA. *See* Resp. 6. n. 5. However, "[i]f the fact that the government enforces privately negotiated contracts rendered any act taken pursuant to a contract state action, the state action doctrine would have little meaning." *White,* 370 F.3d 346, 351 (3d Cir. 2004). In order for the Defendants to be state actors, they must have obtained significant aid from state officials regarding the challenged conduct. Wilkofsky has not alleged any such aid.

*Whether the Defendants' conduct, by its nature, is chargeable to the state*. Finally, the third factor also weighs against state action. Wilkofsky has not alleged any facts as to why the challenged conduct is chargeable to the state by its nature. The crux of Wilkofsky's claim is that the Defendants may be held liable under section 1983 because the state authorized the challenged conduct. However, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. 40, 53 (1999).

As PERA states, the Symphony may be considered a "public employer" for the purposes of the act. *See* Public Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §

1101.301. However, that does not automatically mean that the Symphony is a "public employer" for the purposes of section 1983. *See Oliver*, 415 F. Supp. 3d 602, 609 (E.D. Pa. 2019).

The Defendants do not perform a function delegated by the state, nor are they entwined with government policies or management. *See Id.* at 610. The leadership, bylaws, operations, and priorities of the union in this case are all determined by its membership, not by the state. *See id*. The union "has not been delegated any state functions, nor does it rely upon material resources from the state in carrying about its own activities. Additionally, although public sector collective bargaining is sanctioned by the Commonwealth, [the union] does not play a managerial role in shaping government policies or management decisions." *Id.* "All these facts would indicate that [the Defendants are] not a state actors." *See id.*

Since Wilkofsky has not alleged any facts to support that the Defendants are state actors, the Complaint fails as a matter of law.

V.   **CONCLUSION**

Wilkofsky's section 1983 claim against the private Defendants only lies if the Defendants acted under color of sate law. Wilkofsky has failed to allege any facts to support that the Defendants are state actors. The Complaint therefore fails as a matter of law. As a result, the Court grants the Defendants' motion and dismisses the Complaint without prejudice.

A separate Order follows.

                                            BY THE COURT:

                                            */s/ Joseph F. Leeson, Jr.*
                                            JOSEPH F. LEESON, JR.
                                            United States District Judge